# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 19, 2020 Session[1]

## CLARISSA BIDWELL EX REL. JAMES BIDWELL, ET AL.
## v. TIMOTHY A. STRAIT M.D., ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Hamilton County**
No. 17-C-832   Kyle E. Hedrick, Judge

_____

**No. E2018-02211-SC-R11-CV**

_____

James Bidwell filed this health care liability action individually and on behalf of his deceased wife, Clarissa Bidwell, and her estate against Drs. Timothy Strait and Jeffrey Colburn ("the physician Defendants") and the entities he believed to be their employers—The Neurosurgical Group of Chattanooga, P.C., EmCare Inc., and Envision Healthcare Corporation. Mr. Bidwell timely provided pre-suit notice to the named defendants and timely filed his lawsuit. Mr. Bidwell did not provide Chattanooga-Hamilton County Hospital Authority ("Erlanger") with pre-suit notice, nor did he name Erlanger as a defendant. Furthermore, Dr. Strait and Dr. Colburn did not provide Mr. Bidwell written notice of Erlanger as their correct employer within thirty days of receiving pre-suit notice. See Tenn. Code Ann. § 29-26-121(a)(5). Dr. Strait answered Mr. Bidwell's complaint, denying the allegations made against him and asserting that he was employed by Erlanger at all relevant times. Dr. Colburn similarly answered, denying the allegations made against him and that either EmCare Inc. or Envision Healthcare Corporation was his employer. Drs. Strait and Colburn then moved for summary judgment arguing that, pursuant to the Governmental Tort Liability Act, no judgment could be rendered against them because Mr. Bidwell had failed to name as a defendant their actual employer, Erlanger. See Tenn. Code Ann. § 29-20-310(b). Within ninety days of Dr. Strait's and Dr. Colburn's answers, Mr. Bidwell filed two motions for leave to amend his complaint to add Erlanger as a defendant. Mr. Bidwell relied on Tennessee Code Annotated section 20-1-119, which provides a plaintiff with a ninety-day "grace

---

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings due to the COVID-19 pandemic.

period" within which to amend a complaint when comparative fault "is or becomes an issue," and section 29-26-121(a)(5), which he argued required the physician Defendants to notify him of Erlanger within thirty days of receiving pre-suit notice. The trial court granted Dr. Strait's and Dr. Colburn's motions for summary judgment, finding that Mr. Bidwell's motions to amend were futile because he had not provided Erlanger with pre-suit notice. Mr. Bidwell appealed, and the Court of Appeals vacated the trial court's orders granting summary judgment and remanded the case for further proceedings. Dr. Strait and Dr. Colburn subsequently filed an application for permission to appeal with this Court. We hold that, although the physician Defendants failed to comply with section Tennessee Code Annotated 29-26-121(a)(5), the statute provides no remedy for noncompliance, and their noncompliance does not constitute extraordinary cause sufficient to excuse Mr. Bidwell's failure to provide Erlanger with pre-suit notice. However, we additionally hold that Dr. Strait's and Dr. Colburn's answers sufficiently asserted Erlanger's comparative fault. Therefore, Mr. Bidwell was entitled to amend his complaint to name Erlanger as a defendant pursuant to section 20-1-119, so long as he amended his complaint and caused process to issue to Erlanger within ninety days of Dr. Strait's answer—the first answer alleging Erlanger's fault. Because section 20-1-119 applied, Mr. Bidwell was not obligated to provide Erlanger with pre-suit notice under Tennessee Code Annotated section 29-26-121(c). We conclude that, because the record on appeal reflects that Mr. Bidwell failed to file an amended complaint and cause process to issue, he is not entitled to amend his complaint to add Erlanger as a defendant. Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals on the grounds stated herein and reinstate the trial court's orders granting the physician Defendants' motions for summary judgment and denying the Plaintiff's motions to amend.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
Court of Appeals Affirmed in Part and Reversed in Part;
Judgment of the Trial Court Reinstated**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and ROGER A. PAGE, J., joined. SHARON G. LEE, J., filed an opinion concurring in part and dissenting in part. HOLLY KIRBY, J., filed a concurring opinion.

Joshua A. Powers, Travis B. Holly, and Alexandra E. Weiss, Chattanooga, Tennessee, for the appellant, Jeffrey Colburn, M.D.

Laura Beth Rufolo, Keith H. Grant, and Philip Aaron Wells, Chattanooga, Tennessee, for the appellant, Timothy A. Strait, M.D.

Jimmy W. Bilbo, Cleveland, Tennessee, for the appellee, James Bidwell, Next of Friend and surviving spouse of Clarissa Bidwell, deceased, and on behalf of the estate of Clarissa Bidwell.

Marty R. Phillips and Craig P. Sanders, Jackson, Tennessee, for the Amicus Curiae, Tennessee Defense Lawyers Association.

W. Bryan Smith, Memphis, Tennessee, John Vail, Washington, D.C., and Brian G. Brooks, Greenbrier, Arkansas, for the Amicus Curiae, Tennessee Trial Lawyers Association.

**OPINION**

## I.  Factual and Procedural Background

James Bidwell ("the Plaintiff") is the surviving husband of Decedent, Clarissa Bidwell ("the Decedent"), who, at all relevant times, was a citizen of Meigs County, Tennessee.  On March 28, 2016, the Decedent was hospitalized at Starr Regional Medical Center ("Starr Regional") with complaints of generalized aches, nausea, blurred vision, and right-side numbness.  A computed tomography ("CT") scan performed at Starr Regional revealed "a nine (9) [millimeter] rounded density just lateral to the pituitary, which was concerning for an aneurysm."  Based on these results, the Decedent was transferred by ambulance to the emergency department at Chattanooga-Hamilton County Hospital Authority ("Erlanger") for a neurosurgical consultation with Dr. Timothy A. Strait ("Dr. Strait").  There, the Decedent underwent diagnostic and interventional studies and testing by Dr. Strait and Dr. Blaise Baxter ("Dr. Baxter").  On March 30, 2016, upon a determination that her condition had not worsened, the Decedent was released from Erlanger by her attending physician, Dr. Jeffrey Colburn ("Dr. Colburn"), with instructions to "follow-up with an interventional radiologist the following week."

On the way home from Erlanger, the Decedent began experiencing stroke-like symptoms, including sudden onset slurred speech, left-side weakness, right-gaze preference, and disorientation.  The Plaintiff drove to the nearest hospital, Tennova Healthcare in Cleveland,[2] where the Decedent underwent a CT scan that "revealed an acute, right frontal intracranial hemorrhage."  A helicopter ambulance then returned the Decedent to Erlanger.  The Decedent was admitted to Erlanger's Intensive Care Unit ("ICU"), and the next day, April 1, 2016, she underwent emergency brain surgery.  She died on April 6, 2016.

---

[2] Tennova Healthcare was formerly known as SkyRidge Medical Center.

Tennessee Code Annotated section 29-26-121(a)(1) (2012 & Supp. 2020) requires persons who intend to bring a health care liability action to provide pre-suit notice to "each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability." On March 24, 2017,[3] the Plaintiff provided pre-suit notices to Drs. Colburn and Strait ("the physician Defendants"). The Plaintiff also provided pre-suit notices to The Neurosurgical Group of Chattanooga, P.C. ("The Neurosurgical Group"), EmCare, Inc. ("EmCare"), and Envision Healthcare Corporation ("Envision").[4] The Plaintiff believed that these entities employed the physician Defendants after conducting "a targeted investigation for the purpose of ascertaining the proper identity of all potential defendants, including [Dr.] Strait [and Dr. Colburn] and [their] employer[s]/principal[s]." In his motions for leave to amend his complaint, the Plaintiff asserted that, as part of the "targeted investigation," Plaintiff's counsel searched online databases. The Plaintiff asserted that this search, as it related to Dr. Strait, revealed the online physician listings for Chattanooga Neurosurgery & Spine, which identified Dr. Strait as an employee under the "'Our Doctors' tab." A business entity search through the State of Tennessee Secretary of State's business services website further identified Chattanooga Neurosurgery & Spine "as an active, *assumed* name for the principal corporate entity 'The Neurosurgical Group of Chattanooga, P.C.'"

As the search pertained to Dr. Colburn, the Plaintiff asserted in his second motion for leave to amend his complaint that his counsel was unable to locate Dr. Colburn's practice address on the Tennessee Department of Health, Board of Medical Examiners' website, but that further online investigation revealed a current business address at CHI Memorial Medical Group. The Plaintiff further asserted that, "out of an overabundance of caution," his counsel contacted Erlanger "to further inquire as to [the] identity of [Dr.] Colburn's employer." According to the Plaintiff, counsel "was advised that [Dr.] Colburn provided emergency physician services at [Erlanger] through [EmCare] (a division of [Envision])[,] and that [EmCare] [w]as in the business of contracting with hospitals to staff and manage their emergency department." Based on this information, Dr. Colburn "was believed to be an employee and/or agent of [EmCare], a division of [Envision,]" and pre-suit notices were delivered to both entities. The Plaintiff did not send pre-suit notice to Erlanger. Dr. Strait, Dr. Colburn, The Neurosurgical Group,

---

[3] Constable Brent Runyon personally delivered pre-suit notice to Dr. Colburn on March 24, 2017. Counsel for Mr. Bidwell mailed pre-suit notice to Dr. Strait on March 24, 2017, and it was received by Dr. Strait, or his authorized agent, on March 27, 2017.

[4] The Plaintiff further provided pre-suit notices to Dr. Baxter and Tennessee Interventional & Imaging Associates, PLLC, who were subsequently named as Defendants in the Plaintiff's complaint. Those defendants are not parties to this appeal, and, because the facts pertaining to them do not impact our decision, we do not address them in this opinion.

EmCare, and Envision did not provide the Plaintiff notice "of any other person, entity, or health care provider who may be a properly named defendant" pursuant to Tennessee Code Annotated section 29-26-121(a)(5) (Supp. 2020). That provision provides:

> In the event a person, entity, or health care provider receives notice of a potential claim for health care liability pursuant to this subsection (a), the person, entity, or health care provider shall, within thirty (30) days of receiving the notice, based upon any reasonable knowledge and information available, provide written notice to the potential claimant of any other person, entity, or health care provider who may be a properly named defendant.

On July 24, 2017,[5] the Plaintiff filed suit against Dr. Strait, Dr. Colburn, The Neurosurgical Group, EmCare, and Envision. The Plaintiff did not sue Erlanger. As against The Neurosurgical Group, EmCare, and Envision, the Plaintiff alleged that, "at all times relevant to the subject matter of this Complaint, [Dr.] Strait was an actual, apparent and/or ostensible agent and/or employee of [The Neurosurgical Group,]" that Dr. Colburn "was an actual, apparent and/or ostensible agent and/or employee of defendants [EmCare] and/or [Envision,]" that The Neurosurgical Group was "vicariously liable for the negligent acts and/or omissions of [Dr.] Strait," and that either or both EmCare and Envision were "vicariously liable for the negligent acts and/or omissions of [Dr.] Colburn." The Plaintiff further alleged direct negligence against The Neurosurgical Group, EmCare, and Envision for alleged negligent conduct related to Drs. Strait and Colburn, including negligent hiring, training, and supervision, in addition to negligent failure to formulate, enforce, or otherwise ensure compliance with appropriate policies and procedures.

On August 28, 2017, Dr. Strait filed his answer. Dr. Strait admitted that he provided medical treatment to the Decedent but denied that he was an employee or agent of The Neurosurgical Group. Instead, Dr. Strait asserted that "at all material times, [he] was employed by [Erlanger] and provided healthcare services to [the Decedent] in the course and scope of his employment with [Erlanger]." Dr. Strait further averred that The Neurosurgical Group "sold its assets to [Erlanger] and ceased conducting business" in April 2015. Dr. Strait also asserted as follows:

> This defendant reserves the right, should discovery or evidence, including that presented at trial, indicate it appropriate, to plead the comparative negligence of the decedent or any other person or entity, as a

---

[5] There is no dispute that the Plaintiff's complaint was timely filed against the physician Defendants within the 120-day extension of the statute of limitations provided by Tennessee Code Annotated section 29-26-121(c) (2012 & Supp. 2020).

proximate or contributing cause of all or a portion of the alleged injuries and damages, and to take into account such evidence in apportioning or comparing negligence or fault, causation or damages, whether in apportionment or mitigation. At this time, this defendant has no knowledge of any persons except parties identified and as set forth in the plaintiff's Complaint to which this doctrine would apply.

On September 11, 2017, Dr. Colburn filed his answer. In his answer, Dr. Colburn admitted that he provided medical care to the Decedent and that the Plaintiff properly listed his current work address, but Dr. Colburn denied being an employee or agent of EmCare or Envision at the relevant times. Unlike Dr. Strait, Dr. Colburn did not identify his employer in his answer. Dr. Colburn also asserted the following:

To avoid waiver and pending further investigation and discovery, Dr. Colburn raises the affirmative defense of comparative fault. Should the evidence, as developed through the course of investigation and discovery, or at trial, indicate that others, including but not limited to the other parties in this matter, were guilty of negligence that caused or contributed to the injuries and damages alleged in the Complaint, if any, then Dr. Colburn reserves the right to amend his Answer and to show the same at trial.

EmCare and Envision also each filed an answer on September 11, 2017. They both denied that Dr. Colburn was their employee or agent and asserted comparative fault against the other named defendants.

On October 19, 2017, Dr. Strait moved for summary judgment. As he did in his answer, Dr. Strait asserted that he was employed by Erlanger at all relevant times. In addition, he contended that Erlanger was a governmental entity governed by the Tennessee Governmental Tort Liability Act ("GTLA"), see Tenn. Code Ann. §§ 29-20-101 – 408, which provides, in part, that

[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner. No claim for health care liability may be brought against a health care practitioner or judgment entered against a health care practitioner for damages for which the governmental entity is liable under this chapter, unless the amount of damages sought or judgment entered exceeds the minimum limits set out in [section] 29-20-403 or the amount of insurance coverage actually carried by the governmental entity, whichever is greater, *and the governmental entity is also made a party defendant to the action.*

- 6 -

Tenn. Code Ann. § 29-20-310(b) (2012 & Supp. 2020) (emphasis added). Consequently, Dr. Strait asserted that he was immune from suit for alleged health care liability because Erlanger "was not made a party defendant" in accordance with Tennessee Code Annotated section 29-20-310(b), and that, therefore, the claims against him should be dismissed.

On November 3, 2017, the Plaintiff filed a motion for leave to amend his complaint to "substitute[e] the originally named defendant-employer [of Dr. Strait]: '[The Neurosurgical Group,]' with the properly named defendant-employer: '[Erlanger]'" and assert claims against it on this basis.[6] The Plaintiff also simultaneously provided notice of his voluntary dismissal of The Neurosurgical Group, EmCare, and Envision.

In support of his motion, the Plaintiff contended that Dr. Strait had failed to comply with the requirements of Tennessee Code Annotated section 29-26-121(a)(5), because "[a]t no time prior to the filing of the Complaint, did [Dr. Strait] . . . notify counsel for [the Plaintiff] '*of any other person, entity, or health care provider who may be a properly named defendant*', or that [Dr. Strait] was actually employed by and/or an agent of Erlanger." (Citation omitted). The Plaintiff also argued that Dr. Strait "placed comparative fault at issue . . . by alleging in his Answer to the original Complaint that an entity not a party to the suit[, Erlanger,] caused or contributed to the injury or damage for which [the Plaintiff] is seeking recovery." Specifically, the Plaintiff highlighted the portion of Dr. Strait's answer that asserted he was employed by Erlanger and "provided healthcare services to [the Decedent] in the course and scope of his employment with Erlanger." For these reasons, the Plaintiff averred that he was entitled to timely amend his complaint to add Erlanger pursuant to Tennessee Rules of Civil Procedure 15.01 and 15.03 and Tennessee Code Annotated section 20-1-119, which allows a plaintiff to amend his complaint within ninety days to add "a person not a party to the suit" who a timely sued defendant alleges in an answer "caused or contributed to the injury or damage for which the plaintiff seeks recovery."

On November 14, 2017, Dr. Colburn filed a motion for summary judgment on the same grounds asserted by Dr. Strait. In his affidavit in support of his motion, Dr. Colburn stated that he was employed by Erlanger at all relevant times. On November 20, 2017, the Plaintiff filed a second motion for leave to amend seeking to further amend his complaint to allege that Erlanger was the employer of Dr. Colburn as well as Dr. Strait

---

[6] While the Plaintiff's motion to amend states that the "proposed Amended Complaint is filed herewith," it is not included in the record on appeal. There is also no evidence in the record on appeal that the Plaintiff "cause[d] process to be issued" as to Erlanger after filing his first motion to amend.

and to substitute Erlanger and assert claims against it on this basis.[7] In his motion, the Plaintiff specifically highlighted the portion of Dr. Colburn's answer in which he admitted that the Plaintiff had "properly listed his current work address," and the portion of Dr. Colburn's affidavit in support of his motion for summary judgment stating that "[b]etween August 28, 2015 and February 16, 2017, [he] was employed by [Erlanger] and received [his] paycheck and benefits from Erlanger." Otherwise, the Plaintiff's grounds and contentions were the same as in his original motion to amend.

After a hearing, the trial court denied the Plaintiff's motions to amend and granted the Defendants' motions for summary judgment. By memoranda and orders filed on September 25 and 28, 2018, the trial court held that

> under the relevant and applicable provisions of the GTLA and the HCLA, [Erlanger] is a proper and necessary defendant to this case and its absence as a party defendant, as is required under the [GTLA], makes Plaintiff's case fatally defective. Furthermore, the pre-suit notice requirement of the HCLA and Plaintiff's failure to conform therewith prevents the Plaintiff from curing [Erlanger's] absence by adding it as a party via amendment. . . . [B]ecause Plaintiff cannot amend the complaint to add [Erlanger] as a named defendant without violating the explicit pre-suit requirements of the HCLA, [the trial court] denies Plaintiff's motion for leave to amend and grants summary judgment in favor of the [physician Defendants].

On October 25, 2018, the Plaintiff filed a motion to amend the trial court's findings. The trial court denied that motion and entered an order designating its orders as final, appealable judgments on November 12, 2018.

The Plaintiff appealed. The Court of Appeals vacated the judgment of the trial court and remanded the case for further proceedings. Bidwell *ex rel.* Bidwell v. Strait, No. E2018-02211-COA-R3-CV, 2019 WL 4464815, at *11 (Tenn. Ct. App. Sept. 18, 2019). The intermediate appellate court held, first, that Dr. Colburn and Dr. Strait failed to comply with Tennessee Code Annotated section 29-26-121(a)(5), as neither identified Erlanger as a known and necessary party within thirty days after receiving pre-suit notice as required by that section; second, that the Plaintiff was entitled to the additional ninety days to amend his complaint in order to add Erlanger as a defendant following the filing

---

[7] As in his first motion for leave to amend his complaint, the Plaintiff states in his second motion that his "proposed Second Amended Complaint is filed herewith." Although the record on appeal does not reflect that the amended complaint was separately filed with the trial court, it is included in the record immediately following his second motion. There is also no evidence in the record on appeal that the Plaintiff "cause[d] process to be issued" as to Erlanger after filing his second motion to amend.

of the first answer alleging its fault pursuant to section 20-1-119; and third, that the Plaintiff's failure to provide Erlanger with pre-suit notice was not fatal to his proposed amendments because section 29-26-121(c) states that the pre-suit notice requirement does not apply to a party added after a lawsuit is filed as a result of a defendant's allegation of comparative fault.

We granted the physician Defendants' application for permission to appeal.

## II. Standard of Review

This case is on appeal from the trial court's grant of the physician Defendants' motions for summary judgment and denial of the Plaintiff's motions for leave to amend his complaint to add Erlanger as a defendant. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The parties do not dispute any material fact in this case. Rather, the issues presented are purely questions of law, which this Court reviews de novo with no presumption of correctness. Mann v. Alpha Tau Omega Fraternity, 380 S.W.3d 42, 46 (Tenn. 2012) (citing Mills v. Fulmarque, Inc., 360 S.W.3d 362, 366 (Tenn. 2012)).

A trial court's decision to grant or deny a motion to amend is reviewed under an abuse of discretion standard. Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist., 549 S.W.3d 77, 84 (Tenn. 2018) (citing Pratcher v. Methodist Healthcare Memphis Hosps., 407 S.W.2d 727, 741 (Tenn. 2013)). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." Id.

The question of whether a plaintiff has demonstrated extraordinary cause that would excuse compliance with the pre-suit notice requirements is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. Myers v. AMISUB (SFH), Inc., 382 S.W.3d 300, 307-08 (Tenn. 2012).

This case also involves issues of statutory interpretation. "The construction of a statute is a question of law, which is [likewise] reviewed de novo with no presumption of correctness." Moreno v. City of Clarksville, 479 S.W.3d 795, 802 (Tenn. 2015) (citing Austin v. State, 222 S.W.3d 354, 357 (Tenn. 2007); Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 802 (Tenn. 2000)). Our primary purpose when construing a statute is to give effect to the legislative intent. Austin, 222 S.W.3d at 357. When a

statute is unambiguous, "'[w]e determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" Id. (quoting State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000)); see also Myers, 382 S.W.3d at 311-12.

### III. Analysis

There are two primary issues in this appeal. The first is the effect of the physician Defendants' failure to notify the Plaintiff, within thirty days of receiving pre-suit notice, that Erlanger was their employer. See Tenn. Code Ann. § 29-26-121(a)(5). The second is whether the physician Defendants sufficiently asserted comparative fault in their answers such that the Plaintiff had ninety days to amend his complaint pursuant to Tennessee Code Annotated section 20-1-119, and whether the Plaintiff satisfied the statutory requirements of section 20-1-119. We begin our analysis by addressing the effect of the physician Defendants' failure to notify the Plaintiff of Erlanger as their employer within thirty days of receiving pre-suit notice pursuant to Tennessee Code Annotated 29-26-121(a)(5).

### A. Tennessee Code Annotated § 29-26-121(a)(5)

As discussed above, the Plaintiff sought leave to amend his complaint to add Erlanger as a defendant on the basis that he is entitled to amend, and was excused from providing Erlanger with pre-suit notice, in part, pursuant to Tennessee Code Annotated section 29-26-121(a)(5), section 29-26-121(b), and Tennessee Rules of Civil Procedure 15.01 and 15.03. Tennessee Rule of Civil Procedure 15.01 provides:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . . *Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.* For amendments adding defendants pursuant to [Tennessee Code Annotated section] 20-1-119, however, written consent of the adverse party or leave of court is not required.

(Emphasis added). "Factors the trial court should consider when deciding whether to allow amendments include '[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by pervious amendments, undue prejudice to the opposing party, and *futility of amendment*.'" Cumulus Broad., Inc., v. Shim, 226 S.W.3d 366, 374 (Tenn. 2007) (emphasis added) (quoting Merriman v. Smith, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

In his motions for leave to amend in the trial court, the Plaintiff asserted that "none of the factors . . . appl[ied] to the proposed amendment." As is particularly relevant when considering futility of amendment, the Plaintiff argued, in part, that the physician Defendants' noncompliance with Tennessee Code Annotated 29-26-121(a)(5) constituted extraordinary cause under section 29-26-121(b), thereby excusing his failure to provide Erlanger with pre-suit notice.[8] Additionally, the Plaintiff asserted that his amended complaint should relate back to the original filing of the complaint pursuant to Tennessee Rule of Civil Procedure 15.03.[9] Relying, in part, on this Court's holding in <u>Runions v. Jackson-Madison County General Hospital District</u>, 549 S.W.3d 77 (Tenn. 2018), the trial court concluded, in pertinent part, that

> the pre-suit notice requirement of the HCLA and [the] Plaintiff's failure to conform therewith prevents the Plaintiff from curing [Erlanger's] absence by adding it as a party via amendment. . . . [B]ecause [the] Plaintiff cannot amend the complaint to add [Erlanger] as a named defendant without violating the explicit pre-suit notice requirements of the HCLA, this Court denies the Plaintiff's motion for leave to amend . . . .

Addressing the Plaintiff's argument related to extraordinary cause, the trial court noted that "the extraordinary circumstances necessary to overcome the notice requirement have been found in only a few, limited situations." The court further noted that, while the misinformation the Plaintiff had discovered during his pre-suit investigation into the employer of the physician Defendants "created difficulty," it did not qualify as

---

[8] Although this argument was not clearly raised in his motions to amend, during the hearing on the motions for summary judgment and motions to amend in the trial court on February 23, 2018, the judge asked the Plaintiff's counsel: "is . . . the extraordinary cause that they didn't send you notice? What's the extraordinary cause you're asking me to look at to excuse compliance [with the pre-suit notice requirement]?" The Plaintiff's counsel responded: "Number 1, we fully complied with the statute the best that we could based on records to the world; and, secondly, they didn't send the notice within thirty days." The Plaintiff has continued to assert this argument before the Court of Appeals and this Court.

[9] Tennessee Rule of Civil Procedure 15.03 provides:

Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

extraordinary under existing law "for purposes of excusing noncompliance with the pre-suit notice requirement."

### 1. Compliance with § 29-26-121(a)(5)

We begin our review of the trial court's conclusion by turning to the language of Tennessee Code Annotated section 29-26-121(a)(5). Enacted by the General Assembly in 2015, section 29-26-121(a)(5) provides:

> In the event a person, entity, or health care provider receives notice of a potential claim for health care liability pursuant to this subsection (a), the person, entity, or health care provider shall, within thirty (30) days of receiving the notice, based upon any reasonable knowledge and information available, provide written notice to the potential claimant of any other person, entity, or health care provider who may be a properly named defendant.

When the statutory language is clear and unambiguous, "we accord the language its plain meaning and ordinary usage in the context within which it appears, without a forced interpretation." Runions, 549 S.W.3d at 86. The physician Defendants argue that the lack of a stated remedy or penalty for noncompliance renders the statute ambiguous. We disagree. A statute requiring action is not ambiguous simply because it lacks a consequence or remedy for any noncompliance. See e.g., Stevens *ex rel.* Stevens v. Hickman Comm. Health Care Servs., Inc., 418 S.W.3d 547 (Tenn. 2013). Here, the language of section 29-26-121(a)(5) is clear. It instructs that a person "shall, within thirty (30) days of receiving the notice, based upon any reasonable knowledge and information available, provide written notice to the potential claimant of *any other* person, entity, or healthcare provider who may be a properly named defendant." Tenn. Code Ann. § 29-26-121(a)(5) (emphasis added).

As explained by the intermediate appellate court, the word "other" is used as an adjective modifying "person, entity, or health care provider." This term is not technical and is commonly understood and defined as "being the one (as of two or more) remaining or not included; being the one or ones distinct from that or those first mentioned; not the same; additional." See Merriam-Webster Dictionary, Other, (Oct. 21, 2020) merriam-webster.com/dictionary/other (adjectival definition). We agree with the Court of Appeals that, by modifying the word "other" with "any," "the enacted language clarifies that the recipients of pre-suit notice are to provide the claimant with what amounts to a complete and total identification of all those 'who may be a properly named defendant' based upon 'the reasonable knowledge and information available' to the party that received pre-suit notice." Bidwell *ex rel.* Bidwell, 2019 WL 4464815, at *5.

In the case on appeal, it is undisputed that the physician Defendants failed to provide the Plaintiff with written notice of Erlanger, their employer. Although other circumstances may arise that require us to examine whether defendants had "any reasonable knowledge and information available" that triggered their notice obligation under section 29-26-121(a)(5), that question is not presented by this appeal. Here, it is not disputed that the physician Defendants had "reasonable knowledge and information available" that Erlanger was their employer and, therefore, that Erlanger was another entity or health care provider who may be not just a "properly named defendant," but a necessary party under the GTLA. Therefore, we conclude that the physician Defendants failed to comply with Tennessee Code Annotated section 29-26-121(a)(5).

## *2. Extraordinary Cause*

Although section 29-26-121(a)(5) does not include a remedy for a defendant's failure to satisfy its notification requirement, the Plaintiff argued in the courts below, and argues before this Court, that the physician Defendants' failure to comply with Tennessee Code Annotated section 29-26-121(a)(5) constitutes extraordinary cause that excuses the Plaintiff from providing pre-suit notice to Erlanger. See Tenn. Code Ann. § 29-26-121(b) ("The court has discretion to excuse compliance with this section only for extraordinary cause."). Therefore, he asserts that his motions to amend were not futile and his amended complaint naming Erlanger as a Defendant should relate back to the date of the original complaint.

Tennessee Code Annotated section 29-26-121 does not define "extraordinary cause." In Myers v. AMISUB (SFH), Inc., 382 S.W.3d 300, 310-11 (Tenn. 2012), we analyzed this language using its plain and ordinary meaning, noting:

> "Extraordinary" is commonly defined as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." Webster's New World Dictionary of the American Language, 516 (1966); see also State v. Vikre, 86 N.C. App. 196, 356 S.E.2d 802, 804 (1987) (adopting dictionary definition of extraordinary cause as "going beyond what is usual, regular, common, or customary . . . of, relating to, or having the nature of an occurrence or risk of a kind other than what ordinary experience or prudence would foresee"). One legal scholar, commenting on Tennessee Code Annotated sections 29-26-121 and [-]122, has noted that possible examples of "extraordinary cause" might include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary." [John A. Day, Med Mal Makeover 2009 Act Improves on '08: The New New Medical Malpractice Notice and Certificate of Good Faith Statutes, 45 Tenn. Bar J. 14, 17 (July 2009).]

The Plaintiff asserts that the physician Defendants' failure to comply with Tennessee Code Annotated section 29-26-121(a)(5) alone constitutes extraordinary cause. However, he does not support this statement with any further discussion or argument. Although the trial court did not directly address this argument when ruling on whether extraordinary cause existed, it did note that, while the misinformation the Plaintiff found during his pre-suit investigation may have caused confusion and "created difficulty for the Plaintiff," the facts did not give rise to extraordinary cause. We agree.

Even if we accept the Plaintiff's assertion that its failure either to provide Erlanger with pre-suit notice or name it as a defendant resulted from the physician Defendants' failure to comply with their statutory notification requirement, we cannot agree that this is enough, standing alone, to constitute extraordinary cause in this case. While this leads to harsh results for the Plaintiff, had the General Assembly intended for noncompliance with section 29-26-121(a)(5) to excuse a plaintiff from providing pre-suit notice, it could have said so. See Stevens *ex rel.* Stevens, 418 S.W.3d at 560 (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) ("[I]t is a rule of statutory construction which is well recognized by our courts, that the mention of one subject in a statute means the exclusion of other subjects that are not mentioned.")); see e.g., Tenn. Code Ann. § 29-26-121(c) (noting that the pre-suit notice requirements do not apply to any person or entity that is made a party to an action as a result of a defendant's alleging comparative fault). Although a trial court may conclude in another case that a defendant's failure to comply with section 29-26-121(a)(5) constitutes extraordinary cause, we agree with the trial court's determination that extraordinary cause did not exist in the case on appeal.

Therefore, although we conclude that the physician Defendants failed to comply with Tennessee Code Annotated section 29-26-121(a)(5), because the Plaintiff has not established extraordinary cause sufficient to excuse compliance with the pre-suit notice requirements, and in the absence of a remedy or penalty for noncompliance with section 29-26-121(a)(5), the trial court did not abuse its discretion when it denied the Plaintiff's motions to amend based on futility.[10]

For these reasons, we must turn to the Plaintiff's second argument—that he is entitled to amend his complaint, and was excused from providing Erlanger with pre-suit notice, pursuant to Tennessee Code Annotated section 20-1-119 and section 29-26-121(c).

---

[10] Because we reach this conclusion, we need not address the Plaintiff's arguments pertaining to Tennessee Rule of Civil Procedure 15.03.

## B.  Tennessee Code Annotated § 20-1-119

### 1.  Alleging Comparative Fault Under § 20-1-119

This Court adopted the doctrine of comparative fault in <u>McIntyre v. Balentine</u>, 833 S.W.2d 52, 56 (Tenn. 1992), for a more just apportionment of fault between plaintiffs and defendants.  <u>Austin</u>, 222 S.W.3d at 357.  In keeping with this intent, we stated in <u>McIntyre</u> that

> fairness and efficiency require that defendants called upon to answer allegations [of] negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought.  In cases where such a defense is raised, the trial court shall instruct the jury to assign this nonparty the percentage of the total negligence for which he is responsible.  However, in order for a plaintiff to recover a judgment against such additional person, the plaintiff must have made a timely amendment to his complaint and caused process to be served on such additional person.  Thereafter, the additional party will be required to answer the amended complaint.

833 S.W.2d at 58.  In other words, this Court recognized that

> allowing a defendant to shift some or all of the fault to a nonparty would result in a "predicament for some plaintiffs because a defendant could plead the fault of a nonparty after the statute of limitations had run against that nonparty, thus preventing the plaintiff from adding the nonparty to the suit."

<u>Mann</u>, 380 S.W.3d at 47 (quoting <u>Browder v. Morris</u>, 975 S.W.2d 308, 310 (Tenn. 1998)).

Shortly after our decision in <u>McIntyre</u>, the General Assembly enacted Tennessee Code Annotated section 20-1-119, which addresses the predicament that <u>McIntyre</u> hypothesized.  This statute provides in pertinent part:

> (a)      In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations . . . alleges in an answer . . . to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this

section, the plaintiff may, within ninety (90) days of the filing of the first answer . . . alleging that person's fault, either:

(1) Amend the complaint to add the person as a defendant pursuant to Tenn. R. Civ. P. 15 and cause process to be issued for that person; or

(2) Institute a separate action against that person by filing a summons and complaint.

. . . .

(g) Notwithstanding any law to the contrary, this section applies to suits involving governmental entities.[11]

Section 20-1-119 provides a ninety-day "grace period" for a plaintiff to amend a complaint to add as a defendant any unnamed person alleged by a defendant to have caused or contributed to the plaintiff's injury, even if the statute of limitations applicable to the plaintiff's cause of action has expired. Tenn. Code Ann. § 20-1-119; see also Owens v. Truckstops of Am., 915 S.W.2d 420, 427 (Tenn. 1996); Mills, 360 S.W.3d at 370. In other words, it "provides 'an injured party with a fair opportunity to bring before the court all persons who caused or contributed to the party's injur[y].'" Austin, 222 S.W.3d 357 (citing Townes v. Sunbeam Oster Co., 50 S.W.3d 446, 451 (Tenn. Ct. App. 2001), cited with approval in McNabb v. Highways, Inc., 98 S.W.3d 649, 654 (Tenn. 2003)); see also Mann, 380 S.W.3d at 47 (explaining that Tennessee Code Annotated section 20-1-119 "preserves a plaintiff's prerogative to select defendants in the same manner as before").

Given this purpose, Tennessee courts have consistently "rejected arguments that narrowly construe [section 20-1-119] and have applied the statute in a manner consistent with the concepts of fairness and efficiency that underlie the comparative fault system." Austin, 222 S.W.3d at 357 (citing Browder, 975 S.W.2d 312); see also Mann, 380 S.W.3d at 50 ("We have repeatedly held that section 20-1-119 *must be construed liberally* to effectuate its remedial purpose." (emphasis added)); Becker v. Ford Motor Co., 431 S.W.3d 588, 592 (Tenn. 2014) ("This Court has stated repeatedly that [the statute] *should not be construed narrowly* because it is an integral part of a comparative fault system that is *built on the concepts of fairness and efficiency*." (emphasis added)); Moreno, 479 S.W.3d at 806 (citing Becker, 431 S.W.3d at 592); Townes, 50 S.W.3d at 451, 453-54 ("In light of the statute's purpose . . . we have determined that *it is remedial and should be construed liberally* . . . [and] to enable plaintiffs to have their claims

---

[11] It is undisputed that this provision applies to Erlanger. See Chattanooga-Hamilton Hosp. Auth. v. Bradley Cnty., 249 S.W.3d 361, 363 n.1 (Tenn. 2008) ("Erlanger is a governmental hospital authority created by Private Act in 1976.").

adjudicated on the merits." (emphasis added)); Romine v. Fernandez, 124 S.W.3d 599, 604 (Tenn. Ct. App. 2003) ("[T]his statute is not to be construed narrowly, but *should be construed liberally*." (emphasis added)), perm. app. denied, (Tenn. Dec. 22, 2003); Swearengen v. DMC-Memphis, Inc., 488 S.W.3d 774, 780 (Tenn. Ct. App. 2015) ("[T]he statute is to be construed to afford an injured party a 'fair opportunity to bring before the court all persons who caused or contributed to the party's injuries.'" (quoting Townes, 50 S.W.3d at 451)), perm. app. denied, (Tenn. Aug. 13, 2015).

This liberal construction of the statute applies when a court is determining whether a defendant has sufficiently "allege[d] in an answer . . . to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery." Tenn. Code Ann. § 20-1-119(a). Liberally construing this portion of the statute is also consistent with the liberal pleading standards of the Tennessee Rules of Civil Procedure. Austin, 222 S.W.3d at 358. Under Rule of Civil Procedure 8.03, a defendant may successfully raise comparative fault by "set[ting] forth affirmatively facts in short and plain terms relied upon to constitute . . . comparative fault (including the identity or description of any other alleged tortfeasors)." "A defendant is not required to allege the fault of the nonparty explicitly or use the words 'comparative fault.'" Id. Tennessee courts have applied this liberal standard in several prior decisions.

For example, in Romine v. Fernandez, 124 S.W.3d 599, 600 (Tenn. Ct. App. 2003), cited with approval in Austin, 222 S.W.3d at 357, Mr. Romine and his wife filed a medical malpractice suit against Dr. Morris, who was Mr. Romine's physician, The Office of Bone & Joint Surgery, P.C., and Methodist South relating to contraindicated prescription medication administered to Mr. Romine after knee surgery. In their answer, Dr. Morris and the Office of Bone & Joint Surgery acknowledged that Mr. Romine was administered the medication, "but not at Dr. Morris' order." Id. at 601. Dr. Morris denied that he was guilty of any negligent conduct that resulted in Mr. Romine's injury. Id. He further asserted:

> Dr. Morris has no knowledge of any act of medical negligence committed by any other defendant or third party in the care and treatment of the plaintiff. However, in the event that the plaintiff's allegations of negligence on the part of co-defendants are true, and if the plaintiffs are successful in presenting a factual basis for those allegations, then in that instance Dr. Morris invokes the doctrine of comparative fault and says that under no circumstance would he be liable for more than a proportionate share of the total fault.

Id. However, Dr. Morris did not name or identify any party to which the doctrine of comparative fault would apply.

Nevertheless, pointing to the statements contained in Dr. Morris' answer, the plaintiffs filed a motion to amend their complaint to add an anesthesiologist and a certified registered nurse anesthetist as defendants pursuant to Tennessee Code Annotated section 20-1-119. Id. Dr. Morris responded, arguing that he "did not invoke 'the doctrine of comparative fault against unnamed third parties.'" Id. The Romines filed a supplemental answer to support their motion to amend and alleged "that they 'could not have been aware of who ordered the [medication] until Dr. Morris indicated in his answer that it was not he who did so.'" Id.

The Court of Appeals held that "the statements contained in Dr. Morris' answer were sufficient to put the Romines on notice that someone other than Dr. Morris administered the [medication]." Id. at 604. The intermediate appellate court further reasoned that

> [a]lthough Dr. Morris did not specifically state the names of [the previously unnamed defendants], Dr. Morris' answer provided "reasonable notice of a third party claim and, coupled with the available . . . discovery tools, the plaintiff had more than adequate opportunity and time to discover the third party's identity" and to amend their complaint to add [the unnamed defendants] within the ninety (90) days following the filing of Dr. Morris' answer.

Id. at 604-05 (quoting Soper v. Wal-Mart Stores, Inc., 923 F. Supp 1032, 1038 (M.D. Tenn. 1996)). Lastly, the court emphasized that whether the plaintiffs "knew or should have known" of the unnamed defendants "and their status as potential defendants [was] irrelevant to the application of [section 20-1-119]." Id. at 605 (citing Townes, 50 S.W.3d at 452-53).

In Austin v. State, 222 S.W.3d 354, 355 (Tenn. 2007), this Court directly addressed the issue of whether Tennessee Code Annotated section 20-1-119 provides a plaintiff with ninety days to amend his complaint "when a [named] defendant does not explicitly allege the fault of a nonparty" in his answer. In Austin, the plaintiffs were injured in a car accident after they drove through a stop sign without stopping. Id. at 355-56. The plaintiffs filed a complaint against the county alleging that their injuries were the result of its negligence. Id. at 356. In its answer, the county alleged that

> the traffic sign in question was not placed there by the [county]; that it is in the right of way of the State of Tennessee; that it is under the control of the State of Tennessee; that [the county] has no control over said stop sign, its placement, maintenance, etc. and that it cannot be held liable for the stop sign regardless of its condition.

- 18 -

Id.

As a result of these allegations, the plaintiffs filed a complaint with the Tennessee Claims Commission, asserting the same negligence claims against the State as they made against the county. Id. The State filed a motion for summary judgment, arguing that the plaintiffs' complaint against it was filed after the one-year statute of limitations and, therefore, the plaintiffs' claims against it were barred. Id. The plaintiffs responded, asserting that the county had alleged the State's comparative fault in its answer, and, therefore, Tennessee Code Annotated section 20-1-119 provided the plaintiffs with ninety days to file suit against the State. Id.

After reviewing the history and purpose of the statute, we held that a plaintiff will not be denied the benefit of section 20-1-119 simply because the defendant failed to assert comparative fault in a formulaic manner. Austin, 222 S.W.3d at 357-58 ("[A] plaintiff should not be denied an opportunity to recover against [a] potential tortfeasor simply because a defendant's answer did not follow a precise legal formula." (citing Romine, 124 S.W.3d at 604-05) ("holding that a defendant who gave plaintiff sufficient notice of a nonparty tortfeasor had raised the defense of comparative fault even though he did not explicitly allege the fault of the nonparties")). We specified that a defendant is "not required to allege the fault of the nonparty explicitly or use the words 'comparative fault.'" Id. at 358. Instead, a defendant's answer need only give a plaintiff "notice of the identity of a potential nonparty tortfeasor and allege[] facts that reasonably support a conclusion that the nonparty caused or contributed to the plaintiff's injury." Id. This Court also determined it is "irrelevant whether a defendant alleges that the nonparty is totally or partially responsible for the plaintiff's injury." Id. at 359. For these reasons, this Court concluded that the county's answer identified the State and alleged facts that reasonably supported a conclusion that it was at fault for the plaintiffs' injuries. Id. Therefore, the plaintiffs' complaint against the State was proper. Id.

Additionally, and relevant to this case, in Browder v. Morris, 975 S.W.2d 308, 309 (Tenn. 1998), this Court granted review to determine whether Tennessee Code Annotated section 20-1-119 applies when a defendant raises the comparative fault of vicariously liable nonparties. Noting that section 20-1-119 "was enacted in response to this Court's adoption of comparative fault, and that the concepts of fairness and efficiency form the basis of such a system," and that "[i]t is neither fair nor efficient in a comparative fault scheme to permit a defendant to identify a financially or legally responsible nonparty after the statute of limitations has run against that nonparty, yet deny the plaintiff an opportunity to join them as a defendant," we answered that question affirmatively. Id. at 312. Therefore, when, in an answer or amended answer, a named defendant raises the issue of the comparative fault of a nonparty who may be either directly or vicariously

liable, a plaintiff is entitled to amend the complaint according to the ninety-day grace period of section 20-1-119.

Based on the foregoing authorities, the physician Defendants' arguments that their answers did not trigger Tennessee Code Annotated section 20-1-119 are without merit. In his complaint, the Plaintiff asserted claims of both direct and vicarious liability against The Neurosurgical Group, EmCare, and Envision—the entities which he believed employed the physician Defendants. In his answer filed on August 28, 2017, Dr. Strait clearly stated that "at all material times, [he] was employed by [Erlanger] and provided healthcare services to [the Decedent] in the course and scope of his employment with [Erlanger]." Furthermore, he stated that The Neurosurgical Group "sold its assets to [Erlanger] and ceased conducting business" in April 2015. Dr. Strait also denied he "was negligent in the care and treatment he provided to [the Decedent] or that he was a direct or proximate cause of any alleged injuries and death suffered by [the Decedent]." Lastly, Dr. Strait provided:

> This defendant reserves the right, should discovery or evidence, including that presented at trial, indicate it appropriate, *to plead the comparative negligence of the decedent or any other person or entity, as a proximate or contributing cause of all or a portion of the alleged injuries and damages*, and to take into account such evidence in apportioning or comparing negligence or fault, causation or damages, whether in apportionment or mitigation. At this time, this defendant has no knowledge of any persons except parties identified and as set forth in the plaintiff's Complaint to which this doctrine would apply.

(Emphasis added). All of these statements make it clear that Dr. Strait sufficiently asserted comparative fault, triggering Tennessee Code Annotated section 20-1-119's savings provision. As noted, the Plaintiff alleged claims of direct and vicarious liability against the entities believed to be the physician defendants' employers. By stating that The Neurosurgical Group was not his employer, that The Neurosurgical Group ceased doing business in 2015, that he was not negligent in his care of the Decedent, and that he was employed by Erlanger at all material times and provided care to the Decedent in the course and scope of his employment with Erlanger, Dr. Strait, much like the county in Austin, clearly identified Erlanger as a potential nonparty tortfeasor and "allege[d] facts that reasonably support a conclusion that [Erlanger] caused or contributed to the plaintiff's injury." See Austin, 222 S.W.3d at 358; Browder, 975 S.W.2d at 311-12.

Similarly, Dr. Colburn admitted in his answer, filed on September 11, 2017, to providing care to the Decedent at Erlanger "on the dates reflected in the medical records." He denied that he was an employee or agent of EmCare or Envision, but,

unlike Dr. Strait, did not expressly name his employer. Yet, Dr. Colburn also asserted in his answer:

> To avoid waiver and pending further investigation and discovery, *Dr. Colburn raises the affirmative defense of comparative fault.* Should the evidence, as developed through the course of investigation and discovery, or at trial, indicate that others, including but not limited to the other parties in this matter, were guilty of negligence that caused or contributed to the injuries and damages alleged in the Complaint, if any, then Dr. Colburn reserves the right to amend his Answer and to show the same at trial.

(Emphasis added). Although Dr. Colburn did not explicitly identify Erlanger, these statements were sufficient to put the Plaintiff on notice that an entity other than EmCare and/or Envision was Dr. Colburn's employer. Like the defendant's answer in Romine, Dr. Colburn's answer provided "reasonable notice of a third party claim and, coupled with the available . . . discovery tools, the plaintiff had more than adequate opportunity and time to discover the third party's identity" and to amend his complaint to add Erlanger as a defendant within the ninety-day period Tennessee Code Annotated section 20-1-119 provides.[12] Romine, 124 S.W.3d at 605.

For all of these reasons, we hold that Dr. Strait's and Dr. Colburn's answers triggered the application of Tennessee Code Annotated section 20-1-119. To hold otherwise would undermine the remedial purpose that section 20-1-119 was enacted to serve and frustrate the concepts of fairness and efficiency that form the basis of our comparative fault jurisprudence and section 20-1-119. See Browder, 975 S.W.2d at 311.

### 2. Statutory and Procedural Requirements

As such, the Plaintiff had ninety days from the filing of "the first answer . . . alleging [Erlanger's] fault" to either "*amend* [his] complaint to add [Erlanger] as a defendant pursuant to [Tennessee Rule of Civil Procedure] 15 *and cause process to be issued* for [Erlanger]" or institute a separate legal action against Erlanger by filing a summons and complaint. See Tenn. Code Ann. § 20-1-119(a)(1)-(2). Here, the Plaintiff filed motions to amend his complaint with the trial court rather than simply filing an amended complaint or initiating a separate legal action against Erlanger. This raises the

---

[12] We base this conclusion solely upon the statements contained in Dr. Colburn's answer. We do not consider statements contained in Dr. Colburn's affidavit in support of his motion for summary judgment that "[b]etween August 28, 2015 and February 16, 2017, [he] was employed by [Erlanger] and received [his] paycheck and benefits from Erlanger." See Moreno, 479 S.W.3d at 808 (acknowledging that letters and discovery responses are not "answers" and, therefore, statements contained therein raising comparative fault are not sufficient to trigger Tennessee Code Annotated section 20-1-119).

question of whether the Plaintiff timely and properly complied with the statutory requirements set forth in section 20-1-119, as well as Tennessee Rule of Civil Procedure 15.01.

Prior to 2007, Rule 15.01 stated, in pertinent part, that "[a] party may amend the party's pleadings as a matter of course at any time before a responsive pleading is served . . . . Otherwise, a party may amend the party's pleadings *only by written consent of the adverse party or by leave of court*; and leave shall be freely given when justice so requires." Tenn. R. Civ. P. 15.01 (2006) (emphasis added).

Reflecting both the language of section 20-1-119 and of Rule 15.01, this Court stated in Jones v. Professional Motorcycle Escort Service, LLC., 193 S.W.3d 564, 570 (Tenn. 2006), that "[s]uccessful amendments under section 20-1-119 require four discrete actions within ninety (90) days: (1) the filing and (2) granting of a motion to amend, (3) the filing of an amended complaint, and (4) the issuance of process."  In Jones, the plaintiff completed these four steps within the statutory ninety-day period but did so out of order—filing her amended complaint before filing her motion to amend and obtaining a court order granting her motion to amend.  Id. at 566.  Recognizing that the plaintiff had completed all of the required steps and that "[t]he Tennessee Rules of Civil Procedure are intended 'to [e]nsure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties,'" id. at 573 (quoting Karash v. Pigott, 530 S.W.2d 775, 777 (Tenn. 1975)), this Court held that the plaintiff substantially complied with the requirements in Tennessee Code Annotated section 20-1-119 and Rule 15.01 of the Tennessee Rules of Civil Procedure and that her delay in filing her motion to amend was not fatal, id.

After this Court's holding in Jones, Tennessee Rule of Civil Procedure 15.01 was amended.  As stated previously, the Rule now provides:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires. *For amendments adding defendants pursuant to [Tennessee Code Annotated section] 20-1-119, however, written consent of the adverse party or leave of court is not required.*

Tenn. R. Civ. P. 15.01 (2008) (emphasis added).  The Advisory Commission Comment to the 2007 Amendment explains that "[t]he need for the new third sentence . . . was highlighted by Jones . . . . Because [section] 20-1-119 allows potential comparative tortfeasors pleaded in the answer to be added to the complaint, there is no reason to trouble the trial court with permission to amend."  Thus, the current version of Rule 15.01

dispenses with two of the requirements outlined in Jones: (1) the filing of a motion to amend and (2) an order granting the motion to amend. Under the current version of Rule 15.01 and the holding in Jones, a plaintiff relying on section 20-1-119 must satisfy two requirements within ninety days: (1) file an amended complaint and (2) cause process to be issued to the party named in the amended complaint.

In the case on appeal, Dr. Strait filed his answer prior to Dr. Colburn on August 28, 2017. The Plaintiff filed two *motions* for leave to amend—the first on November 3, 2017 and the second on November 20, 2017. Both motions were filed within the ninety-day period provided by section 20-1-119. However, while the record on appeal reflects that the Plaintiff *attached* his second amended complaint to his second motion for leave to amend,[13] he failed to *actually amend* his complaint within ninety days of Dr. Strait's answer. Had the Plaintiff simply filed an amended complaint naming Erlanger as a defendant pursuant to section 20-1-119, as Rule of Civil Procedure 15.01 permits, and caused process to issue to Erlanger within ninety days of Dr. Strait's answer, he would have properly and timely satisfied the statutory requirements of section 20-1-119.[14] However, he did not do so, and his motions to amend "simply fail[] to fulfill the unambiguous requirements of the statute." Ward v. AMI SUB (SFH), Inc., 149 S.W.3d 35, 39 (Tenn. Ct. App. 2004).[15]

---

[13] Although his first motion to amend recited that his amended complaint was attached, it is not included in the record on appeal.

[14] As discussed by the intermediate appellate court, had the Plaintiff timely and properly complied with the statutory requirements of Tennessee Code Annotated section 20-1-119, his failure to provide Erlanger with pre-suit notice would not have precluded him from pursuing his cause of action against Erlanger. See Tenn. Code Ann. § 29-26-121(c) ("Once a complaint is filed alleging a claim for health care liability, the notice provisions of this section shall not apply to any person or entity that is made a party to the action thereafter by amendment to the pleadings as a result of a defendant's alleging comparative fault.").

[15] We recognize that this is a harsh result, and we take this opportunity to urge litigants adding a party pursuant to section 20-1-119 to timely file an amended complaint and cause process to issue as opposed to filing a motion to amend alone. To the extent a litigant is also seeking to amend a complaint on grounds separate from Tennessee Code Annotated section 20-1-119, our holding does not alter the procedure under Rule 15.01 requiring the litigant to receive leave of court or written consent from the adverse party. Thus, in cases like this one, the litigant may need to pursue alternative paths of separately filing an amended complaint naming the comparative tortfeasor and causing process to issue pursuant to section 20-1-119 and Rule 15.01 and also filing a motion to amend requesting leave of court on any additional grounds.

## IV.  Conclusion

For these reasons, we affirm in part, and reverse in part, the Court of Appeals on the separate grounds stated herein and reinstate the trial court's orders granting the physician Defendants' motions for summary judgment and denying the Plaintiff's motions to amend.  Costs of this appeal are taxed to Mr. Bidwell, for which execution may issue if necessary.

_____

CORNELIA A. CLARK, JUSTICE